IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MYRNA HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. |
| MIDLAND FUNDING, LLC and ) | |
| MIDLAND CREDIT MANAGEMENT, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Myrna Hernandez, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), for a finding that Defendants' debt collection actions violated the FDCPA, and to recover damages for Defendants' violations of the FDCPA, and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. §§ 1331 and 1337.

2. Venue is proper in this District because parts of the acts and transactions occurred here, and Defendants transacts substantial business here.

## STANDING

3. Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a personalized and concrete injury in the form of, among other things, emotional distress caused by Defendants' wrongfully filing suit against her, when the alleged debt was outside the statute of limitations.

1

5. Plaintiff has thus suffered an injury because of Defendants' conduct, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6. Plaintiff, Myrna Hernandez ("Ms. Hernandez" or "Plaintiff") is a resident of the State of Illinois, from whom the Defendants attempted to collect a delinquent consumer debt originally owed to Synchrony Bank. Plaintiff is thus a consumer as that term is defined by 15 U.S.C. § 1692a(3) of the FDCPA.

7. Defendant Midland Funding LLC ("Midland") is a Delaware limited liability company with its principal place of business at 3111 Camino Del Rio N, Suite 103, San Diego, CA 92108. It does or transacts business in Illinois.

8. Midland operates a nationwide delinquent consumer debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, Midland acted as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debt when it attempted to collect the delinquent consumer debt from Plaintiff.

9. Midland is registered as a collection agency with the Illinois Department of Financial & Professional Regulation.

10. Midland is a debt scavenger that specializes in buying large portfolios of defaulted consumer debts for pennies on the dollar, the full amount of which it then tries to collect through other debt collectors.

11. Midland acts as a debt collector as defined by § 1692a(6) of the FDCPA because it uses the instrumentalities of interstate commerce including the telephone and/or the mails in its business, the principal purpose of which is the collection of defaulted consumer debts.

12. Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, CA 92108-8875. MCM does or transacts business in Illinois.

13. MCM acts as a debt collector as defined by § 1692a(6) of the FDCPA because it uses the instrumentalities of interstate commerce including the telephone and/or the mails in its business, the principal purpose of which is the collection of defaulted consumer debts.

14. MCM also acts as a debt collector as defined by § 1692a(6) of the FDCPA as it regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15. Midland regularly uses MCM to collect debts on its behalf from consumers.

16. Defendant MCM operates a nationwide delinquent debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, MCM acted as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debt when it attempted to collect the delinquent consumer debt from Plaintiff.

17. Defendant MCM is a collection agency, as that term is defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq., and attempts to collect debts held in the name of Midland Funding, LLC.

18. Defendant MCM is registered as a collection agency with the Illinois Department of Financial & Professional Regulation.

## FACTUAL ALLEGATIONS

19. According to Defendants, Plaintiff incurred a debt for the purchase of goods or services used for personal, family, or household purposes, originally to Citibank, N.A. ("alleged debt"). The alleged debt is thus a debt as that term is defined by § 1692a(5) of the FDCPA.

20. Defendants claim that the alleged debt was charged off and sold, transferred or otherwise assigned to Midland for collection.

21. Defendant MCM regularly attempts to collect alleged debts on behalf of Midland.

22. Defendant MCM began attempting to collect the alleged debt from Plaintiff and began reporting it on Plaintiff's credit report in October 2017.

23. Plaintiff subsequently reviewed his credit report and noticed that Defendants Midland and MCM were reporting that he owed $7,718 on the alleged debt.

24. Plaintiff believed that this was inaccurate and that she did not owe that amount, and instructed her attorneys to notify Midland that she disputed the debt and was represented by counsel.

25. On or about May 1, 2019, Plaintiff, through counsel, faxed a letter to Defendant Midland notifying it that Plaintiff disputed the alleged debt and that he was represented by counsel. (Exhibit A, May 1, 2019, Dispute Letter).

26. The letter constituted a dispute regarding the debt, and that dispute was communicated to Defendant.

27. Defendant received the dispute letter shortly thereafter.

28. On or about May 1, 2019, Defendant knew or should have known that Plaintiff disputed the accuracy of the debt.

29. On or about July 11, 2019, Defendant communicated information regarding the alleged debt to the Equifax consumer reporting agency.

30. Defendants Midland and MCM communicated, *inter alia*, an account balance, an account number, and a date reported. (Exhibit B, Excerpt from Plaintiff's Equifax Report).

31. Even though Plaintiff notified Defendant that he disputed the alleged debt, Defendant failed to communicate that Plaintiff's alleged debt was disputed when it communicated other information to Equifax regarding the alleged debt on or about July 11, 2019.

32. Credit reporting by a debt collector constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

33. A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008)

34. 15 U.S.C. § 1692e of the FDCPA also provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

5

> **. . . (8) Communicating or threatening to communicate to any person credit information which is known, or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

35. On or before July 11, 2019, Defendant knew or should have known that Plaintiff had disputed the alleged debt because Defendant received the dispute and reviewed it.

36. Even though Defendant knew or should have known, prior to July 11, 2019, that Plaintiff disputed owing the alleged debt, Defendant communicated credit information about Plaintiff to the Equifax consumer reporting agency, while omitting the fact that Plaintiff disputed that alleged debt, in violation of 15 U.S.C. §§ 1692e and 1692e(8).

37. The failure to mark a disputed debt as disputed will cause harm to a consumer and influence their actions regarding the debt. *Evans v. Portfolio Recovery Associates, LLC*, 889 F.3d 337, 349 (7th Cir. 2018). ("Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score.").

38. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. See, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I—FAIR DEBT COLLECTION PRACTICES ACT

39. Plaintiff re-alleges the previous paragraphs as if set forth fully in this count.

40. Defendant failed to communicate the fact of Plaintiff's dispute to the Equifax consumer reporting agency when communicating other information regarding the alleged debt, in violation of 15 U.S.C. §§ 1692e and 1692e(8).

41. Because of the Defendant's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorney fees.

WHEREFORE, Plaintiff asks that the Court enter judgment in his favor and against Defendant as follows:

    A. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

    C. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    D. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

By:   /s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys

Bryan Paul Thompson
Robert W. Harrer
CHICAGO CONSUMER LAW CENTER, P.C.
111 West Washington Street, Suite 1360
Chicago, Illinois 60602
Tel. 312-858-3239
Fax 312-610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them.

These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys